IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and THOMAS SHUTT, WILLIAM PIPER, DON SULLIVAN, SR., JAMES MURPHY, and WALTER WILLIAMS individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>C.R. ENGLAND, INC.<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br><br><br>Case No. 2:02 CV 950 TS |

This matter comes before the Court on Plaintiffs' Motion for Class Certification. Plaintiffs' have asked the Court to certify a class in which Plaintiffs would represent "all owner-operators in the United States who have entered federally regulated leases with C. R. England, or its authorized agents or business affiliates." (Am. Class Action Compl. ¶ 13.)

## I. PROCEDURAL BACKGROUND

On February 15, 2005, Plaintiffs filed a Motion for Class Certification and a Memorandum

in Support of that motion. On March 21, 2005, Plaintiffs filed an Amended Class Action Complaint. On April 7, 2005, Defendant filed an Answer to Amended Complaint and, on June 14, 2005, a Memorandum in Opposition to Plaintiffs' Motion for Class Certification. On July 14, 2005, Plaintiffs filed a Reply Memorandum in Support of Plaintiffs' Motion for Class Certification.

## II.  FACTUAL BACKGROUND

Plaintiffs Owner-Operator Independent Drivers Association ("OOIDA"), Thomas Shutt, William Piper, Don Sullivan, Sr., James Murphy, and Walter Williams brought this action under 49 C.F.R. § 376, alleging that Defendant has violated that statute by using lease agreements which contain unlawful provisions and omit certain required provisions, by improperly managing escrow funds and charge-backs, by requiring Plaintiffs to purchase certain products and services as conditions of its leases, and by failing to deliver certain documentation to Plaintiffs regarding insurance and other matters. (Am. Class Action Compl. ¶ 2.) Plaintiffs now claim that Defendant has committed such violations against an entire class of individuals, which Plaintiffs hope to represent. (Id.; cf. Mem. in Supp. of Mot. for Class Certification at 6-7)

The parties agree that Defendant has used "two distinct and different forms of [Independent Contractor Operating Agreement]," (Mem. in Opp'n to Pls.' Mot. for Class Certification at vi; see also Am. Class Action Compl. ¶ 15) although Defendant disagrees with Plaintiffs' assertion that these leases are "substantively identical." (Am. Class Action Compl. ¶ 15. Contra Mem. in Opp'n to Pls.' Mot. for Class Certification at vi). Each of the individual Named Plaintiffs—Thomas Shutt, William Piper, Don Sullivan, Sr., Walter Williams, and James Murphy—has signed an Independent Contractor Operating Agreement ("Lease" or "ICOA") with England (Mem. in Opp'n to Pls.' Mot.

for Class Certification at vii-xiii; see also Am. Class Action Compl. ¶ 16) and one Named Plaintiff—James Murphy—has signed Defendant's Revised Lease (Am. Class Action Compl. ¶¶ 10, 32). All but one—James Murphy—has signed a Vehicle Lease Agreement ("VLA") with Opportunity Leasing, Inc. (Mem. in Opp'n to Pls.' Mot. for Class Certification at vii-xiii; see also Am. Class Action Compl. ¶ 23), a corporation affiliated with C.R. England and, therefore, subject to the same regulations (both corporations operate under common ownership, with common officers and directors, and at the same location) (Am. Class Action Compl. ¶¶ 23-24).

### III. DISCUSSION

The Tenth Circuit has described the standard for class certification as follows:

> Although the party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met, the district court must engage in its own "rigorous analysis" of whether "the prerequisites of Rule 23(a) have been satisfied." In doing so, the court must accept the substantive allegations of the complaint as true, although it "need not blindly rely on conclusory allegations which parrot Rule 23" and "may consider the legal and factual issues presented by plaintiff's complaints."

Shook v. El Paso County, 386 F.3d 963, 968 (10th Cir. 2004) (citations omitted). Rule 23(a) establishes four prerequisites to class certification—numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) delineates the three types of class actions that may be maintained and establishes additional prerequisites specific to each type.

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "It is not required that the precise number of class

members be known at the time of certification.  However, 'mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).'" <u>Baker v. Comprehensive Employee Solutions</u>, 227 F.R.D. 354, 358 (D. Utah 2005) (citations omitted).

It is undisputed that Plaintiffs meet the numerosity requirement described in Rule 23(a)(1). Based on data provided by Defendant (<u>see</u> Mem. in Supp. of Mot. for Class Certification at 3 n.6), Plaintiffs estimated that the number of "individual owner-operators who are members of this Class" is "over one thousand."[1] (Am. Class Action Compl. ¶ 14.)

### 2. *Commonality*

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Plaintiffs allege and the Court finds that "Plaintiffs' case is grounded solely upon the federal Truth-in-Leasing regulations" (Mem. in Supp. of Mot. for Class Certification at 3), such that all questions of law are common to all members of the class. The Court also finds that this case is grounded on common questions of fact because "[e]ach potential class member is," by virtue of the class definition, "party to a standard lease agreement which is substantively identical to the agreements alleged in this Complaint to be in violation of the federal leasing regulations." (Am. Class Action Compl. ¶ 15; <u>see also</u> Am. Class Action Compl. ¶¶ 20(e), 21, 25. <u>Contra</u> Ans. to Am. Compl. ¶¶ 15, 20, 21, 25.) Furthermore, Plaintiffs allege that Defendant has acted in an improper and "uniform course of conduct involving escrows, charge-backs against compensation, forced

---

[1] In their Memorandum in Support of Motion for Class Certification, Plaintiffs estimated that "the proposed class consists of approximately 7,000 owner-operators." (Mem. in Supp. of Mot. for Class Certification at ii.)

purchases and insurance products," which has caused injury to the class as a whole. (Mem. in Supp. of Mot. for Class Certification at 6-7; cf. Am. Class Action Compl. ¶ 2.)  The Court finds that all causes of action arise from such leases and from England's allegedly systematic actions.

Plaintiffs' amended complaint "identifies two distinct and different forms of leases--one form of lease utilized by England from 1998 to July 2002 ('Lease' or 'ICOA') and a revised form of lease used after July 2002 ('Revised Lease')." (Mem. in Opp'n to Pls.' Mot. for Class Certification at vi; see also Am. Class Action Compl. ¶ 15.)  Defendant argues that Plaintiffs' failure to "identify any specific terms of the Revised Lease that are alleged to violate the truth in leasing regulations . . . prevents this Court's appropriate Rule 23 analysis of commonality." (Mem. in Opp'n to Pls.' Mot. for Class Certification at 10.)  Defendant is mistaken.  This Court "must accept the substantive allegations of the complaint as true." Shook, 386 F.3d at 968.  If, as Plaintiffs allege, the two leases are "substantively identical" (Am. Class Action Compl. ¶ 15), then the fact that there are "two distinct and different forms of leases" (Mem. in Opp'n to Pls.' Mot. for Class Certification at vi) is irrelevant.  Therefore, this Court finds that, for the purposes of class certification, the two leases are "substantively identical"  (Am. Class Action Compl. ¶ 15) and that Plaintiffs have met Rule 23's commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

In their amended complaint, Plaintiffs allege and the Court finds that "[t]he claims of the Plaintiffs are typical of the claims of the potential Class as a whole in that all claims arise from

materially identical standard lease agreements alleged to be in violation of the federal leasing regulations." (Am. Class Action Compl. ¶ 16.) Each of the individual Named Plaintiffs has signed a Lease with England (Mem. in Opp'n to Pls.' Mot. for Class Certification at vii-xiii; see also Am. Class Action Compl.¶ 16) and all but one—James Murphy—has signed a VLA with Opportunity Leasing, Inc. (Mem. in Opp'n to Pls.' Mot. for Class Certification at vii-xiii; cf. Am. Class Action Compl.¶ 23). One of the plaintiffs, James Murphy, has signed C.R. England's Revised Lease. (Am. Class Action Compl.¶¶ 10, 32.) However, the Court chooses not to rely on this fact anywhere in its decision because it is uncertain whether Murphy is currently operating under the Revised Lease. (See Id.  But see Reply Mem. in Supp. of Pls.' Mot. for Class Certification at 9; Mem. in Opp'n to Pls.' Mot. for Class Certification at xii-xiii.) Instead, the Court relies on OOIDA's position in this litigation. "OOIDA has associational standing to seek declaratory and injunctive relief on behalf of its members who are owner-operators currently under lease to C.R. England." (Reply Mem. in Supp. of Pls.' Mot. for Class Certification at 9.) All of the claims in this suit arise from either the allegedly improper drafting of these lease agreements or the allegedly improper and systematic manner with which C.R. England treats its owner-operators. Therefore, the Court finds that the claims of the Named Plaintiffs are typical of the putative class members' claims against C.R. England.

### *4. Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court determines legal adequacy based on the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

action vigorously on behalf of the class?" Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-1188 (10th Cir. 2002) (citation omitted).  However, a conflict of interest is only relevant if it is related to the subject matter of the suit.  Redmond v. Commerce Trust Co., 144 F.2d 140, 151 (8th Cir. 1944).

Plaintiffs argue and the Court finds that The Cullen Law Firm, PLLC would adequately represent the class because it "has been involved in numerous class actions around the country on behalf of owner-operators."[2]  (Am. Class Action Compl. ¶ 17.)  The Court also finds that OOIDA adequately represents the class because it "has previously participated as class representative on behalf of owner-operators in several cases."[3]  (Id.)  Plaintiffs allege that they "are capable of fairly and adequately protecting the interests of the Class."  (Id.)   This Court must accept Plaintiffs' alleged facts as true, but the Court must make its own determination concerning Plaintiffs' legal conclusions.  Shook, 386 F.3d at 963.  The Court finds that Plaintiffs allege facts sufficient to support the assertion that the individual named plaintiffs would adequately represent the proposed class.

### a. The Cullen Law Firm, PLLC

There is no dispute regarding The Cullen Law Firm's adequacy as class counsel.  The Cullen

---

[2] See, e.g., OOIDA v. New Prime, Inc., 398 F.3d 1067 (8th Cir. 2005); OOIDA v. Swift Transp. Co., 367 F.3d 1108 (9th Cir. 2004); OOIDA v. New Prime, Inc., 339 F.3d 1001 (8th Cir. 2003); OOIDA v. Ledar Transp., 2004 U.S. Dist. LEXIS 7869, No. 00-258 (W.D. Mo. Jan. 7, 2004); OOIDA v. Arctic Express, Inc., 288 F. Supp. 2d 895 (S.D. Oh. 2003).

[3] See, e.g., OOIDA v. New Prime, Inc., 398 F.3d 1067 (8th Cir. 2005); OOIDA v. Swift Transp. Co., 367 F.3d 1108 (9th Cir. 2004); OOIDA v. New Prime, Inc., 339 F.3d 1001 (8th Cir. 2003); OOIDA v. Ledar Transp., 2004 U.S. Dist. LEXIS 7869, No. 00-258 (W.D. Mo. Jan. 7, 2004); OOIDA v. Arctic Express, Inc., 288 F. Supp. 2d 895 (S.D. Oh. 2003).

Law Firm has served as class counsel in several class actions similar to the one that Plaintiffs are pursuing here. (Id. at ¶ 20(f).) It has also spent considerable time and resources on this particular case and understands the relevant issues.

### b. OOIDA

Defendant argues that OOIDA "clearly has a competitive stake in the outcome and a conflict of interest in serving as a class representative." (Mem. in Opp'n to Pls.' Mot. for Class Certification at xiii.) Defendant offers two arguments in support of this allegation.

"First, OOIDA directly competes with motor carriers like England in the provision of the very same kinds of products and services challenged in the Amended Complaint. OOIDA also negotiates product discounts with suppliers of trucking equipment and services and presumably earns a commission when its members purchase from those suppliers." (Id. (citations omitted).) Defendant argues that allowing OOIDA to fund class actions of this type would give OOIDA a monopoly in the offering of these products and services to its members, accompanied by all the usual problems associated with monopolies. (Id.) This slippery-slope argument requires much speculation. Furthermore, even if there were a true conflict of interest here, there is little reason to suspect that OOIDA's interests would affect this litigation in any way contrary to the interests of the potential class members. Defendant's argument is similar to suggesting that one of the other named plaintiffs is likely to use his share of the potential damages to injure another member of the putative class—regardless, each putative class member is seeking the same resolution in the immediate lawsuit. This alleged conflict of interest could only influence the litigation if OOIDA's interest in injunctive relief stifles the remaining class members' interest in money damages. However, this will

not be an issue if The Cullen Law Firm adequately represents the class.  Furthermore, OOIDA's alleged interests, as described above, would only cause it to prosecute the action all the more vigorously.

Second, Defendant argues "OOIDA offers a load-matching service which it touts as 'your source for loads and your place to post your available truck' – a description that could just as easily have described a core aspect of England's commercial relationship with its independent contractor drivers . . . ." (Mem. in Opp'n to Pls.' Mot. for Class Certification at xiv.)  "Through this load-matching service, [OOIDA] and those of its members who are not under lease to England or another carrier are competing for freight directly with England and with those of OOIDA's members who are under lease to England or another carrier."  (Id. at xiv.)  Even if it is true that OOIDA is competing or at least aiding some of its members in competing against England and, indirectly, against those OOIDA members who are currently under lease to England, this conflict still does not influence the litigation in any way that is contrary to the interests of the members of the putative class.  The lawsuit will place a considerable financial strain on England, especially if it is certified as a class action, and this financial pressure will, in some way or another, be passed on to those who are under contract with England.  However, this does not mean that OOIDA's interests in this lawsuit are adverse to the interests of any of the putative class members, since those potential class members who would prefer that no lawsuit were brought will have the opportunity to opt out and would do so regardless of OOIDA's influence in the litigation (assuming, of course, that there would be a lawsuit without OOIDA's influence).  And, regarding this assumption, the fact that OOIDA's interests might be adverse to those putative class members to the extent that OOIDA's interests are

the impetus for the class action, the entire inquiry into conflicts of interest is premised on the assumption that there will, indeed, be a lawsuit. Any putative class member's interest to the contrary are, therefore, irrelevant. In the end, OOIDA, like the other named Plaintiffs and the putative class members, is merely asking the Court to enforce federal law.

### c. The Individual Named Plaintiffs

Defendant asserts that "there is no plaintiff who ever functioned under the Revised Lease to represent such a class." (Mem. in Opp'n to Pls.' Mot. for Class Certification at 10 n.22.) Defendant acknowledges that James Murphy signed it, but claims that "he terminated immediately after receiving his signing bonus." (Id.) However, as discussed above, this issue is moot because the Court finds that OOIDA sufficiently represents those putative class members who have signed the Revised Lease. (See, e.g., Reply Mem. in Supp. of Pls.' Mot. for Class Certification at 9.)

The only remaining question is whether there is a conflict of interest between those who are still working for England and those who no longer are. As discussed above, those who are currently working for England might prefer only injunctive relief or, perhaps, no lawsuit at all, whereas those who no longer work for England are solely interested in damages. Defendant alleges that any claims regarding the Revised Lease are "distinct and separate from the claims regarding the Lease and thus not suitable for inclusion in that proposed class." (Mem. in Opp'n to Pls.' Mot. for Class Certification at 10.) However, also as discussed above, if Plaintiffs receive any injunctive remedy regarding the Revised Lease, they will almost certainly receive money damages for past injuries as well; therefore, the potential conflict is immaterial. Furthermore, OOIDA is a powerful player in this litigation and, if Defendant has correctly described OOIDA's interests, OOIDA will vigorously

pursue injunctive relief, such that all of the putative members' interests will be well represented. Indeed, the varying interests in the proposed class are no different, and certainly no more complex or conflicting, than those of so many other classes which have been properly certified.[4]

### B. Rule 23(b)

"To succeed on a motion for class certification, Plaintiffs must satisfy at least one subsection of Rule 23(b)." Monreal v. Potter, 367 F.3d 1224, 1235 (10th Cir. 2004); see also Amchem Products v. Windsor, 521 U.S. 591, 614 (1997). "[W]hen deciding a motion for class certification, the district court should accept the allegations contained in the complaint as true." J.B. by Hart v. Valdez, 186 F.3d 1280, 1290 (10th Cir., 1999), quoted in Shook, 386 F.3d at 968.

Plaintiffs seek to have this class action certified under Rule 23(b)(3) or, alternatively, Rule 23(b)(2). (Mem. in Supp. of Mot. for Class Certification at 6; see also Am. Class Action Compl.¶¶ 18-19.) Appropriately, Plaintiffs do not contend that this action might be certified under Rule 23(b)(1).

### 1. Rule 23(b)(3)

This Court will only certify a class action under Rule 23(b)(3) if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the

---

[4] See, e.g., OOIDA v. New Prime, Inc., 398 F.3d 1067 (8th Cir. 2005); OOIDA v. Swift Transp. Co., 367 F.3d 1108 (9th Cir. 2004); OOIDA v. New Prime, Inc., 339 F.3d 1001 (8th Cir. 2003); OOIDA v. Ledar Transp., 2004 U.S. Dist. LEXIS 7869, No. 00-258 (W.D. Mo. Jan. 7, 2004); OOIDA v. Arctic Express, Inc., 288 F. Supp. 2d 895 (S.D. Oh. 2003).

>prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem, 521 U.S. at 615 (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697). Indeed, Rule 23(b)(3) covers situations in which "'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations," but "'may nevertheless be convenient and desirable.'" Id. (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697). Accordingly, courts should take a "'close look' at the predominance and superiority criteria." Id.

However, "[w]here a court is faced with a straightforward question to certify or not certify a clearly defined class or subclass the court can keep both of its options open by certifying the class with the idea of later decertifying the class should the evidence show that certification was not warranted." Boughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995). Furthermore, "where the question of basic liability can be established readily by common issues, then it is apparent that the case is appropriate for class action." Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 796 (10th Cir. 1970). "The fact that there may have to be individual examinations on the issue of damages has never been held . . . a bar to class actions." Id. at 798.

"Plaintiffs' case is grounded solely upon the federal Truth-in-Leasing regulations" (Mem.

12

in Supp. of Mot. for Class Certification at 3) and each claim is based on Defendant's lease agreements and Defendant's allegedly "uniform course of conduct involving escrows, charge-backs against compensation, forced purchases and insurance products." (Mem. in Supp. of Mot. for Class Certification at 6-7). Unlike Amchem, where many of the putative class members had no way of knowing whether or to what extent their health would eventually be affected by their previous exposure to asbestos, 521 U.S. at 624, in the present case, information regarding which of the putative class members have been affected by Defendant's leases and other conduct can be determined by looking at Defendant's records. There is no difficulty in determining causation, if and when injury is established. Contra id. Putative class members would, therefore, experience no material advantage by controlling any aspect of the case, including whether and when to settle. Additionally, this Court would not experience much more difficulty in managing a class action than in managing the individual claims already before it.

Also regarding manageability, this case involves only one federal statute, applicable to each claim. Assuming individuals would choose to litigate, this Court could save tremendous amounts of judicial resources by certifying the class because the only question of law or fact that must be individually adjudicated is the question of damages.[5] Furthermore, "the amounts in controversy for individual owner-operators are relatively small, so that individual members of the Class would not find it cost-effective to bring individual claims." (Am. Class Action Compl.¶ 20(a). Contra Ans.

---

[5] The issue has not been specifically raised by either party, but it may also be necessary to individually adjudicate the amount, if any, which Defendant has overcharged each putative class member for repairs — which will not be easily determined by looking at Defendant's files. On the other hand, there may be alternative means for determining these amounts.

to Am. Compl. ¶ 20.)  Not surprisingly, there appears to be "no litigation already commenced by Class Members concerning the causes of action raised in the Complaint."  (Am. Class Action Compl.¶ 20(c).  Contra Ans. to Am. Compl. ¶ 20 (denying this, but failing to point out any cases which have already commenced)).

Defendant cites several cases in support of its assertion that common issues do not "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In particular, Defendant cites a recent case in which the Illinois Supreme Court decided recently that the circuit (trial) court had improperly certified a class action. Avery v. State Farm Mutual Automobile Ins. Co., ___ N.E.2d ___, 2005 WL 1981444 (Ill., Aug. 18, 2005). In Avery, State Farm argued, against Plaintiffs' assertion to the contrary, that it used several different standard form contracts. Id. at *3. Some contracts promised, in the case of an accident, "to restore plaintiffs' vehicles to their pre-loss condition using parts of like kind and quality" while others promised much less. Id. The trial court had certified the class without first deciding whether the various contracts were subject to the same interpretation. Id. The Illinois Supreme Court held that the trial court "was incorrect in concluding . . . that the question of uniform contractual interpretation should be decided at trial rather than at the class certification stage [because,] had the court answered the question in the negative rather than the affirmative, the class could not have been certified." Id. at *11.

Defendant hopes that Avery will influence this Court to deny class certification. However, not only is Avery not binding, but, more importantly, it is easily distinguished from the present case. The Court finds no reason why it could not properly grant Plaintiffs' motion for class certification even if the old Lease and the Revised Lease are found to be materially different. This fact would,

14

at most, cause the creation of subclasses within the class. It would not bar class certification. Furthermore, in direct contrast with Avery, the Tenth Circuit has held that this Court may certify a class "with the idea of later decertifying [it] should the evidence show that certification was not warranted." Boughton, 65 F.3d at 827.

### 2. *Rule 23(b)(2)*

Plaintiffs seek to have this class certified under Rule 23(b)(2) if they fail to meet the requirements of Rule 23(b)(3). However, this class fits more appropriately under Rule 23(b)(3) and, therefore, it is unnecessary to evaluate the propriety of certifying it under Rule 23(b)(2).

### IV. CONCLUSION

The Court finds that this case clearly meets the requirements of Rule 23 and should be certified. It is therefore

ORDERED that Plaintiffs' Motion for Class Certification is GRANTED.

DATED  August 29, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge