IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and THOMAS SHUTT, WILLIAM PIPER, DON SULLIVAN, SR., JAMES MURPHY, and WALTER WILLIAMS individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br><br><br><br><br>                vs.<br><br><br>  C. R. ENGLAND, INC.,<br><br>        Defendant. | <br><br><br><br>MEMORANDUM DECISION AND ORDER ON FINALIZATION OF THE ACCOUNTING OF ESCROW ACCOUNTS, DEFENDANT'S PROPOSED SET-OFFS, ACTUAL DAMAGES, AND RESTITUTION<br><br><br><br><br><br>Case No. 2:02-CV-950 TS |

## I.  BACKGROUND

This case came before the Court on Plaintiffs' allegations that the form lease agreements Defendant required its independent contractor drivers to sign violated the Federal Truth in Leasing Act – 49 U.S.C. §§ 14102 and 14704, *et seq.* – and accompanying Department of Transportation Regulations (the "Regulations") – 49 C.F.R. § 376, *et seq.*  Plaintiffs alleged: (1) that the lease agreements, known as the Independent Contractor Operating Agreements ("ICOA"), failed to clearly

specify certain charge-backs against compensation; (2) that Defendant unlawfully forced individual Plaintiffs to purchase certain services as a condition of entering into the ICOA; and (3) that Defendant mismanaged escrow funds by using monies in escrow funds for items not specifically mentioned in the ICOA, actions prohibited by the Regulations.  Plaintiffs initially sought declaratory, injunctive, and monetary relief, but withdrew and waived their claims for money damages shortly before trial.[1]

A Bench Trial was held from October 17, 2006 through October 25, 2006, and the Court issued its Findings of Fact and Conclusions of Law ("Findings") on June 20, 2007.[2]  In the Findings, the Court held that Defendant had violated the Regulations in all three respects.[3]  The Court also held, and hereby restates the holding, that Plaintiffs failed to prove actual damages with respect to the charge-backs against compensation.[4]  The Court held that it was not authorized to order restitution in the absence of actual damages and that injunctive relief was inappropriate.  Plaintiffs claims regarding charge-backs and forced purchases are thus disposed of, and the only remaining issue for the Court is the violation of the Regulations as they pertained to escrow accounts.

The Court ordered an accounting of the escrow accounts held by Defendant under the ICOA (the "Accounting") to determine if and when Defendant had improperly deducted unauthorized (not specifically mentioned in the ICOA) amounts from escrow accounts on an individual account basis.

---

[1] *See* Docket No. 251, at 7.

[2] Docket No. 299.

[3] Docket No. 299, ¶ 47.

[4] Docket No. 299, ¶ 49.  Although the Court did not therein find, it hereby does so find that, as to forced purchases, no actual damages have been proven and Plaintiffs are therefore precluded from receiving restitution for those claims.

On August 20, 2007, Defendant filed a Proposal Regarding Class-Wide Accounting,[5] and Plaintiffs filed their Response on October 10, 2007,[6] objecting to various portions of the Proposal.  On January 1, 2008, Defendant filed a Motion to Limit Scope of Accounting,[7] which led to the Court's March 4, 2008 Order,[8] in which the Court held that: (1) all drivers who had signed the ICOA must be included in the Accounting; and (2) detailed deductions for refurbishment must be included in the Accounting.  The Court also held that items specified in the Vehicle Lease Agreement ("VLA"), an additional agreement between Defendant and individual Plaintiffs, could not be considered as incorporated into the ICOA, and therefore could not be included in the Accounting.  The Court postponed a determination regarding Defendant's proposed set-offs until the Accounting was complete.

On April 14, 2008, Defendant filed a Report on Accounting,[9] and on April 18, 2008, Plaintiffs filed a Motion for Supplemental Proceedings for the Award of Restitution and to Reject Defendant's Accounting.[10]  The Court heard oral arguments on June 2, 2008, on the Motion, and issued preliminary findings that: (1) the Court can award restitution after a showing of actual damages; and (2) there may be legitimate offsets or recoupment.

---

[5]Docket No. 305.

[6]Docket No. 309.

[7]Docket No. 317.

[8]Docket No. 322.

[9]Docket No. 328.

[10]Docket No. 328.

A Status Conference was held October 20, 2008 (the "Status Conference"), and parties presented oral arguments and status reports regarding the state of the Accounting and possible avenues for resolving any issues surrounding actual damages. The Parties agree to the basic form of the Accounting, with remaining disputes centered around Defendant's proposed set-offs against the balances remaining in the escrow accounts. Specifically, Plaintiffs dispute the following proposed set-offs: (1) specific repair and tire purchases; (2) truck refurbishment deductions; (3) remaining truck lease payments; (4) truck insurance; (5) fuel and other trip expenses; (6) Federal Highway Use Tax; (7) Settlement administration fee, Insurance administration fee, and satellite usage fee; (8) other insurance; (9) "Auto advance;" (10) License and permits; (11) OFS bookkeeping services; (12) Salary advance; and (13) "other."

## II. ACCOUNTING AND DAMAGES

The Court must finalize the Accounting, which requires the Court to determine which, if any, of the proposed set-offs may be considered in the Accounting. Once the Accounting has been completed, Plaintiffs will be entitled to restitution if actual damages can be proven. Plaintiffs argue that "[t]he measure of damages is . . . the unrecovered amounts remaining in the maintenance escrows at the time of termination of each class member."[11]  The *Arctic Express* court rejected "impos[ing] punitive damages on the Defendants" or "provid[ing] Plaintiffs with an unjustifiable windfall."[12]  Defendant argued at the Status Conference that actual damages can only be determined after considering all debts legitimately owed to Defendant by individual Plaintiffs. The Court is sitting in equity in this case, and equity requires that debts legitimately owed by individual Plaintiffs

---

[11]*Owner-Operator Independent Drivers Association v. Arctic Express*, 288 F. Supp. 2d 895, 908 (S.D. Ohio 2003).

[12]*Id.*

to Defendant not go unpaid.  To allow Plaintiffs to avoid legitimate debts to Defendant would be to impose punitive damages on Defendant and result in an unjustifiable windfall to Plaintiffs.

The Court finds that determination of actual damages must be calculated on an individual basis, rather than as a class.  The Accounting, once completed, will allow Plaintiffs to see, for each leased truck, the amount owed each individual Plaintiff from the escrow accounts.  That is the measure of Defendant's wrongful conduct in this matter, and it mandates that Defendant be allowed to include in the Accounting only lawful deductions from escrow accounts.  However, Plaintiffs are wrong in their assertion that the measure of wrongfulness is also the measure of actual damages. The Court finds that the amount of actual damages is the net amount owed each individual Plaintiff under the escrow accounts, the ICOA, and any other employment-related agreements between Plaintiffs and Defendant.[13]  Stated another way, the class member is entitled to receive as actual damages those monies which that class member paid into any or all of the three escrow accounts, less actual obligations incurred by that class member that were authorized by the ICOA or another agreement between that class member and Defendant.

Therefore, for the reasons given below, Defendant will be ordered to finalize the Accounting, and will be ordered to include as a deduction only those deductions listed under "specific repair and tire purchases."  All other proposed deductions will be excluded from the Accounting.  The case will then enter an individual damages phase, wherein a truck-by-truck

---

[13]As noted above, the Court has previously held that the VLA cannot be considered part of the Lease agreement between Plaintiffs and Defendant, so the VLA cannot be considered in any determination of actual damages under the Lease.  Certain other agreements may be considered to the extent they relate to the Lease agreement signed by individual Plaintiffs and Defendant.

analysis of actual damages will take place.  Within that analysis, the starting point will be the balance of the escrow accounts, as determined by the Accounting.

The Parties will have opportunity to present evidence regarding the legitimacy of certain debts allegedly owed by Plaintiffs to Defendant.  If the total value of legitimate debts owed by an individual Plaintiff to Defendant for the truck leased by that Plaintiff is greater than the balance of the escrow account, actual damages will not have been proved, and no restitution will be ordered.  If, however, the total value of legitimate debts owed by an individual Plaintiff to Defendant is less than the balance of the escrow account, the difference will be the measure of actual damages and restitution will be ordered, along with payment of reasonable interest.

### III.  DEFENDANT'S PROPOSED SET-OFFS

1.  <u>Specific repair and tire purchases</u>

"Plaintiffs do not contest that Class members approved deductions from their maintenance escrow funds for repairs and tire purchases during their lease."[14]  However, Plaintiffs argue that any undisclosed mark-ups may not be deducted.  However, this ignores the Court's express holding that Defendant is not prohibited from making a profit, and that the violation regarding mark-ups was a disclosure violation only.  Therefore, all repair and tire purchases are approved deductions from escrow accounts, and must be included in the Accounting.  Because these set-offs will be deducted prior to finalizing the Accounting, they will not be considered during the analysis of damages.

2.  <u>Truck refurbishment charges</u>

Truck refurbishment charges are not included in the ICOA, and therefore may not be deducted from escrow accounts under the Regulations.  Defendant argues that they are included in

---

[14]Pl.'s Status Report (Docket No. 345), at 4.

the VLA, but the Court has previously held that the VLA is not considered part of the Lease under the Regulations.  Therefore, truck refurbishment charges will be excluded from the Accounting.

Truck refurbishment charges will also be excluded from the analysis of damages.  Defendant argues that the refurbishment charges are legitimate, in that refurbishment repairs were actually performed on the trucks, and that it would constitute unjust enrichment if class members were not required to pay for those repairs.  However, the Court's previous holding that the VLA may not be considered as part of the Lease precludes consideration of any deduction for which Plaintiffs owe a contractual obligation solely under the VLA.

3.      Remaining truck lease payments

The truck lease payments were not mentioned as authorized deductions from any escrow accounts, so the Court will order that truck lease payments be excluded from the Accounting. However, truck lease payments were mentioned in Addendum 3 to the ICOA, and may therefore be considered during the damages analysis, as a potentially legitimate debt owed by individual Plaintiffs to Defendant.  The Court notes that truck lease payments were also mentioned in the VLA, and directs that consideration of lease payments exclude any terms in the VLA regarding truck lease payments.

4.      Truck insurance, insurance administration fee, and other insurance

There is no argument by either party that truck insurance payments were specifically mentioned as authorized deductions from escrow accounts, so they will be excluded from the Accounting.  However, insurance deductions from compensation are specifically mentioned in Addendum 3 to the ICOA, so insurance deductions may be considered during the damages analysis.

5.      Fuel and other trip expenses

The Court found that Plaintiffs consented to a charge-back against compensation for fuel costs incurred by Plaintiffs through the use of special cards that allowed them to gain a discount on fuel at certain truck stops.   Neither party contends that these deductions were authorized to be made from escrow accounts, so they will be excluded from the Accounting.

The Court also found that Defendant failed to disclose to Plaintiffs the mark-up on fuel discounts, and failed to provide Plaintiffs with a recitation of how the charges were to be computed. However, the Court also held that making a profit on fuel mark-ups was not a violation of the Regulations, and that the violation of the Regulations was merely the failure to disclose.  The Court reaffirms that there is no violation inherent in making a profit, only in the  failure to properly disclose the mark-up, and will allow evidence regarding these deductions to be considered during the damages analysis.

6.     Federal Highway Use Tax

The Court has already found that the ICOA provided for a deduction of $0.015 per mile to pay federal highway use taxes, and that Defendant deducted it from compensation and considered it a fuel/road tax escrow fund.  The Court has also held that there was no specific mention of a fuel/road tax escrow fund, nor did the ICOA specify to which items any such escrow funds could be applied, nor did the ICOA specify the conditions under which Plaintiffs would receive those escrow funds.  The Court will order that any such deductions be excluded from the Accounting. However, the Court will allow Defendant to present evidence regarding actual expenses for the Federal Highway Use Tax during the damages analysis.

7.     Settlement administration fee and satellite usage fee

These fees are unrelated to any escrow accounts, and so must be excluded from the Accounting.  However, these fees are explicitly referenced in Addendum 3 of the ICOA, so they may be considered during the damages analysis.

        8.      <u>"Auto Advance"</u>

The Auto Advance category refers to a charge-back against compensation when there is a negative balance from a previous settlement.  Defendant claims that it is a legitimate deduction under the ICOA, which authorizes Defendant to deduct any debt owed to Defendant by individual drivers.  Plaintiffs argue that it is not specifically mentioned in the ICOA, and so cannot be deducted.  The Court finds that paragraph 4 of the ICOA authorizes Defendant to deduct from pay any advances to individual drivers, including Defendant's proposed set-off for auto advance.  These are not authorized deductions from escrow accounts, so these charges must be excluded from the Accounting.  They can, however, be considered during the damages analysis.

        9.      <u>License and Permits</u>

Plaintiffs argue that this category of set-off is improper, because it is a debt owed to a separate entity, namely Opportunity Leasing.  Defendant notes that Addendum 3 to the ICOA identifies license and permit charges as an item that may be deducted from settlement statements.  These arguments center around the propriety of deducting the amounts from compensation, not from escrow accounts.  These amounts must therefore be excluded from the Accounting, but may be considered during the damages analysis.

10.   <u>OFS bookkeeping services</u>

"Plaintiffs correctly point out that OFS bookkeeping services are not disclosed in the ICOA . . ."[15]  Defendant argues, however, that the services were separately authorized by drivers, to be deducted from compensation.  It is clear that fees for OFS bookkeeping services were not specifically authorized as a deduction from escrow accounts, so they have no place in the Accounting.  However, evidence regarding the legitimacy of these charges may be considered during the damages analysis.

11.   <u>Salary Advance</u>

The Court finds that paragraph 4 of the ICOA authorizes deduction of salary advances.  Any such deductions, however, are from pay and not from escrow account balances.  Therefore, the Court will order that any salary advance deductions be excluded from the Accounting and considered only during the damages analysis.

12.   <u>Other</u>

Plaintiffs argue that Defendant's "other" category is too broad and too undefined.  Defendant argues that the expenses listed under "other" are legitimate.  Only where the ICOA expressly mentions deductions from escrow accounts can such deductions be included in the Accounting.  The Court finds that the "other" category is too undefined, and will order that any such expenses be excluded from the Accounting.  Defendant, however, will be allowed to present evidence regarding the legitimacy of these expenses during the damages analysis.

IV.  CONCLUSION

It is therefore

---

[15]Def.'s Response to Pl.'s Status Report (Docket No. 354) at 18.

ORDERED that Defendant finalize the accounting of escrow accounts ordered by the Court on June 20, 2007, including only the first of its proposed set-offs, "Specific repair and tire purchases."  The Accounting is to be finalized and submitted to the Court within 30 days of the date of this Order.  It is further

ORDERED that, upon submission of the finalized accounting of escrow accounts, the case will be referred to Magistrate Judge David Nuffer for a truck-by-truck analysis of actual damages.  Actual damages must be proved on an individual basis before restitution may be ordered.  This analysis will incorporate consideration of the finalized accounting, as well as the following set-offs proposed by Defendant, in the manner discussed above: remaining truck lease payments; truck insurance; fuel and other trip expenses; Federal Highway Use Tax; Settlement administration fee; Insurance administration fee; Satellite usage fee; Other insurance;  "Auto advance;" License and permits; OFS bookkeeping services; Salary advance; and "other."

DATED   October 24, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

11