IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., *et al.*, <br><br> Plaintiffs, <br> vs. <br><br> C. R. ENGLAND, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR AWARD OF PREJUDGMENT INTEREST** <br><br> Case No. 2:02 CV 950 TS <br><br> District Judge Ted Stewart <br> Magistrate Judge David Nuffer |

This arises out of Plaintiffs' allegations that Defendant improperly administered escrow funds established under lease agreements (Independent Contractor Operating Agreement or ICOA) whereby Plaintiffs leased their trucks to Defendant for use in Defendant's trucking business. Plaintiffs successfully claimed[1] that Defendant's actions violated the federal Truth-in-Leasing Regulations.[2]

In the October 24, 2008 Order on Finalization of the Accounting of Escrow Accounts, the district judge ordered that restitution awards to individual Plaintiffs and Class Members should be paid "along with payment of reasonable interest."[3] Plaintiffs' Motion for Award of Prejudgment Interest[4] raises the issue of the appropriate interest rate.

### Summary of Initial Positions

Plaintiffs argue that Utah's statutory legal interest rate of 10% should be imposed,[5] while Defendant argues that the Treasury bill rate should apply because of a federal regulation

---

[1] Docket No. 299, ¶ 47, filed June 20, 2007.

[2] 49 C.F.R. Part 376.

[3] Docket no. 358, at 6, filed October 24, 2008.

[4] Docket no. 371, filed January 30, 2009.

[5] Plaintiffs' Memorandum in Support of Motion for Award of Prejudgment Interest (Memorandum in Support), docket no. 372, filed January 30, 2009.

governing the lease escrow funds which are being accounted in this case.[6]  Defendant argues the Utah contract rate cannot apply because (a) the ICOA specifies an interest rate, making the Utah statute inapplicable;[7] (b) the case is not a contract case, but a case alleging federal regulatory violations;[8] and (c) choice of law language in the ICOA does not invoke the Utah interest statute because Plaintiffs' claims are not made under the ICOA, but under regulations.[9]

## Contractual, Statutory and Regulatory Provisions

The Utah statute reads:

> (1) The parties to a lawful contract may agree upon any rate of interest for the loan or forbearance of any money, goods, or chose in action that is the subject of their contract.
> (2) Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum.[10]

The federal regulation on lease escrow funds, applicable to the relationship between these parties, reads:

> [W]hile the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, the carrier may deduct a sum equal to the average advance made to the individual lessor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91-day, 13-week Treasury bills as established in the weekly auction by the Department of Treasury.[11]

This regulatory provision is made specifically applicable to the escrow balance by the lease form in use between Plaintiffs and Defendants.  The contract establishes a Maintenance

---

[6] Defendant C. R. England's Memorandum in Opposition to Motion for Pre-Judgment Interest (Memorandum in Opposition) at 2-3, docket no. 375, filed February 17, 2009.

[7] *Id.* at 3-4.

[8] *Id.* at 4-5.

[9] *Id.* at 5-6.

[10] Utah Code Ann. § 15-1-1(2) (Supp.1990).

[11] 49 C.F.R. § 376.12(k)(5).

Escrow on which interest will be "paid quarterly based on the interest rate on the 1st day of each quarter determined by the current average yield or equivalent upon issue yield on 91 day, 13 week treasury bills as established in the preceding weekly auction by the U.S. Department of Treasury."[12]

The contract further provides that funds in the escrow will be paid out within 45 days of termination of a lease relationship. "Upon the termination of the Agreement WE shall pay YOU the balance in the Escrow fund less any appropriate offsets within 45 days."[13]

Another provision of one form of the ICOA governs interest accruing on *any amount over 30 days past due* between the parties:

> The undersigned[14] agrees that in the event of default in the payment of any amount due and if this account is placed in the hands of an agency or attorney for collections or legal action, to pay the cost of collection, attorney fees and court costs incurred and permitted by law governing these transactions. A finance charge of 1 ½ % per month (18% annually) will be charged on balances over 30 days past due."[15]

As pointed out in the supplemental briefing on this motion, not all the ICOAs have this paragraph.[16]

## Initial Evaluation

The practices of the Defendant have been held to violate the Truth-in-Leasing regulations. The relationship of the parties was contractual, based on the ICOA. The

---

[12] Addendum 2 to Independent Contractor Operating Agreement at 2, attached as Exhibit A to Plaintiffs' Reply to Defendant's Opposition to Motion for Award of Prejudgment Interest, docket no. 382, filed February 27, 2009.

[13] *Id.* at 3.

[14] This is the only instance of the use of the word "undersigned" the magistrate judge has found in the ICOA. Otherwise, the words "YOU" and "WE" (and at times, "YOU and WE") are used to designate the respective parties. The ICOA concludes that "YOU and WE are both bound by this Agreement" and "YOU and WE have executed this Agreement . . . ."

[15] Independent Contractor Operating Agreement at 4.

[16] Plaintiffs' Supplemental Argument Regarding Prejudgment Interest Rate (Plaintiffs' Supplemental Memorandum) at 3, docket no. 398, filed May 11, 2009; Defendant C.R. England Inc.'s Supplemental Memorandum Regarding Prejudgment Interest (Defendant's Supplemental Memorandum) at 5, docket no. 399, filed May 11, 2009.

result of the Truth-in-Leasing violations is to make sums due to these parties whose relationship is founded in contract. Without a contract, there would be no relationship to which the Truth-in-Leasing regulations would apply.

The magistrate judge made preliminary observations[17] that:

a. The regulatory interest rate, restated in the contract, applies to balances held on deposit in the escrow, but

b. After sums under the ICOA are due and payable, the applicable rate is 1½ per cent per month, or 18 percent per annum; and

c. The Utah statutory rate does not apply because the ICOA provides for interest rates, one to apply to entrusted funds and the other (present only in some ICOAs) to apply to sums in default.

Because the applicability of the contractual section applying an interest rate to funds in default was not briefed directly by either party, the magistrate judge invited additional briefing.[18] The parties complied.

## Supplemental Briefing

As noted by both parties in their supplemental memoranda, there are two versions of the ICOAs; an earlier one and a later one. The earlier version of the ICOA did not contain any default interest rate prevision.[19] The later ICOAs contained the default interest provision specifying an interest rate of 18% per annum.[20]

Plaintiffs argue that because the newer ICOA contracts have the default interest rate provision of 18% per annum, custom would suggest that all ICOA contracts should

---

[17] Memorandum Decision and Order Regarding Motion for Award of Prejudgment Interest, docket no. 396, filed May 5, 2009.

[18] *Id.*

[19] William 'Al' Piper's ICOA attached as Exhibit A to Defendant's Supplemental Memorandum; Donald Lee Sullivan's ICOA attached as Exhibit E to Plaintiffs' Supplemental Memorandum.

[20] Thomas Alan Shutt's ICOA attached as Exhibit A to Plaintiffs' Supplemental Memorandum at Ex. A; James V. Murphy's ICOA attached as Exhibit B to Plaintiffs' Supplemental Memorandum.

4

receive the same treatment.[21] Plaintiffs further argue that if the default interest rate provision of 18% per annum does not apply to all ICOA contracts, then Utah's statutory rate of 10% should apply to the ICOAs without the provision.[22]

Defendant advances several arguments against applying the contractual default rate. Defendant states the regulatory rate controls even after default.[23] However, the regulatory provision only provides a floor. As stated in the Truth-in-Leasing Regulation, "The interest rate . . . shall be at least equal to [the specified regulatory rate]."[24] The ICOAs without the default interest rate do specify the regulatory rate as the contractual rate. But in the other ICOAs the default interest rate is contractually specified as 18% per annum. This higher contractual rate is consistent with the regulations since the regulations only specify a minimum rate. (This analysis also defeats Defendant's argument that the specified 18% rate contravenes the regulations.[25])

Defendants assert that the 18% rate that Defendant's contract specifies is not reasonable.[26] However, Defendant should not be permitted to argue that its own form contract is unreasonable when that rate is applied to Defendant.

Defendant asserts the contracts with the 18% rate provision cannot apply that rate to the funds in default because the *more specific* provision for escrow fund interest controls over the *more general* provision for past due funds.[27] Actually, the court sees it

---

[21] Plaintiffs' Supplemental Memorandum at 3.

[22] *Id.* at 3.

[23] Defendant's Supplemental Memorandum at 1.

[24] 49 C.F.R. § 376.12(k)(5) (2008).

[25] Defendant's Supplemental Memorandum at 2-3.

[26] *Id.* at 4-5.

[27] *Id.* at 4.

just the other way around:  A specific interest rate stated for funds in default should control over a more general rate applicable to escrow funds.

Defendant claims the default interest rate provision of 18% annually was not included in all of the ICOA contracts and enforcing it across the board would provide overcompensation to some of the plaintiffs.[28]  The court agrees that applying the rate regardless of the language of each ICOA is not permitted.

Defendant also argues that because the newer ICOAs contain the provision and older ICOAs did not, it will be very difficult, administratively, to enforce different interest rates.[29]  The varying rates do add one more dimension to the accounting, but every account is an individual account, and the magistrate judge is tasked with seeing that the accounting is done.  There are many individual factors in the accounting, and this is only one more factor which must be considered.

## Decision

First, as stated above, the regulatory interest (contractual) rate applies to balances held on deposit in the escrow in all ICOA contracts.

Next, because only some versions of the ICOA contain the 18% per annum default interest rate provision, the accounting will only use that rate for those Class Members whose ICOA specifies the default interest rate of 18% per annum.  For the Class Members whose ICOA does not have that provision, the regulatory rate continues to apply. Under Utah law, the statutory interest rate applicable to amounts in default is 10% per annum for any contracts silent in regard to default interest rates.  Because each ICOA does have a contractual rate, the Utah statutory rate does not apply at all.

---

[28] *Id.* at 5.

[29] *Id*.

Further, for Class Members whose ICOA specifies the default interest rate of 18% per annum, the default interest rate of 18% per annum does not take effect until "balances [are] over 30 days past due." Thus, there is a grace period of 30 days – beyond the 45 days after contract termination when sums are payable[30] – before the 18% per annum rate is applied. This does not mean that no interest accrues during the grace period, rather, the regulatory (contractual) rate continues from the time of the default until the grace period ends.

Therefore, the following interest rates shall be applied in the accounting.

a. The regulatory interest rate, also stated in the contract, applies to all balances held on deposit in the escrow;

b. The regulatory interest rate applies after sums under the ICOA are due and payable; but

c. For Class Members whose ICOA specifies a default interest rate, that rate applies to sums over 30 days past due – that is after 45 days has passed since termination of the ICOA; and

d. The Utah statutory rate does not apply because the contracts in this case are not silent concerning interest rate provisions.

| Type of Agreement | During Escrow (including 45 days after termination) | 30 Day "Grace Period" | Beyond "Grace Period" |
|---|---|---|---|
| ICOA **with** 18% default interest rate provision | Regulatory interest rate applies | Regulatory interest rate applies | ICOA default interest rate of 18% applies |
| ICOA **without** default interest rate provision | Regulatory interest rate applies | Regulatory interest rate applies | Regulatory interest rate applies |

Fig. 1   Summary of applicable interest rates.

---

[30] Independent Contractor Operating Agreement at 4

7

**ORDER**

IT IS HEREBY ORDERED that the motion for award of interest[31] is GRANTED and the Defendant shall pay Prejudgment Interest in accordance to the schedule specified above.

Dated this 21st day of May 2009.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[31] Docket no. 371, filed January 30, 2009.