# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., *et al.,* <br><br> Plaintiffs, <br><br> vs. <br><br> C. R. ENGLAND, INC., <br><br> Defendant. | **MEMORANDUM DECISION - INTERIM REPORT REGARDING C. 1. (b) CLAIMS** <br><br> Case No. 2:02 CV 950 TS <br><br> District Judge Ted Stewart <br><br> Magistrate Judge David Nuffer |

This order is an interim report on one of the many categories of claims the magistrate judge is considering preparatory to a final evaluation of damages in this case.[1] The parties have agreed, and the magistrate judge has ordered, that these interim reports on claim categories are not final and that all objections to this and similar interim orders are reserved until entry of the Final Report and Recommendations of the Magistrate Judge.[2]

## Background

Plaintiffs leased trucks to Defendant under Defendant's form lease agreements known as the Independent Contractor Operating Agreements (ICOA). Defendant was found to have violated the Federal Truth in Leasing Act[3] and accompanying Department of Transportation

---

[1] Proposed Joint Adjudication Plan for Contested Set-Offs (Adjudication Plan 467) at 9, docket no. 467, filed January 3, 2011.

[2] *Id.*

[3] 49 U.S.C. §§ 14102 and 14704, *et seq*.

Regulations[4] with regards to escrow funds Defendant administered under those leases.[5]  There are about 1800 individual driver accounts at issue.[6]

On August 20, 2007, Defendant filed a Proposal Regarding Class-Wide Accounting[7] (Proposed Accounting),  and after review and objections, filed a Report on Accounting (Revised Accounting) on April 18, 2008.[8]  The District Judge then outlined a damages assessment process, and as a first step, entered a Finalization Order[9] requiring Defendant to provide an Accounting (Final Accounting) of the escrow funds by November 24, 2008.[10]  The Final Accounting was to be the escrow fund balances, less only one Deduction for "[s]pecific repair and tire purchases."[11]  The District Judge found that while Plaintiffs owed other amounts to England, only one deduction could be made from the escrow funds in the Final Accounting. Defendant filed the Final Accounting on November 24, 2008.[12]

The Finalization Order stated the Final Accounting was preparatory to a "truck-by-truck analysis of actual damages" (Magistrate Judge Accounting) which is the task now underway by the magistrate judge.[13]

---

[4] 49 C.F.R. § 376, *et seq.*

[5] Findings of Fact and Conclusions of Law at ¶ 47, docket no. 299, filed June 20, 2007.

[6] Transcript February 24, 2011, at 52.

[7] Defendant C.R. England, Inc.'s Proposal Regarding Class-Wide Accounting, docket no. 305, filed August 20, 2007.

[8] Defendant C.R. England's Report on Accounting, docket no. 326, filed April 14, 2008. Exhibit A [Exhibit identifiers refer to exhibits from the hearing commenced February 10 and concluded February 24, 2011].

[9] Memorandum Decision and Order on Finalization of the Accounting of Escrow Accounts, Defendant's Proposed Set-Offs, Actual Damages, and Restitution (Finalization Order 358), docket no. 358, filed October 24, 2008.

[10] *Id.* at 11.

[11] *Id*. at 5, 11.

[12] Defendant C.R. England, Inc.'s Submission of Final Accounting, docket no. 359, filed November 24, 2008.

[13] Finalization Order 358, at 11.

## List of Accountings

Because there are so many "accountings" this table summarizes them and their purposes:

| Date | Short Title | Purpose | Docket No. | Exhibit No. |
|------|-------------|---------|-----------|-------------|
| 8/20/07 | Proposed Accounting | England's proposal for accounting with multiple pages per driver | 305 | -- |
| 4/14/08 | Revised Accounting | A revision of the proposal with detailed data in a spreadsheet format. | 326 | A |
| 11/24/08 | Final Accounting | A summary of the Escrow Balances less the Deduction for Repair and Tire Purchases, but before set-offs | 359 | B |
| -- | Magistrate Judge Accounting | A final statement of damages per driver, considering set-offs, interest | -- | -- |

## Magistrate Judge Accounting

The Magistrate Judge Accounting was to start with the Final Accounting and then allow Set-Offs for many other items including "remaining truck lease payments; truck insurance; fuel and other trip expenses; Federal Highway Use Tax; Settlement administration fee; Insurance administration fee; Satellite usage fee; Other insurance; 'Auto advance;' License and permits; OFS bookkeeping services; Salary advance; and 'other.'"[14]  The consideration of these amounts was required by the District Judge because "[t]he Court is sitting in equity in this case, and equity requires that debts legitimately owed by individual Plaintiffs to Defendant not go unpaid."[15]

The Final Accounting *and* Magistrate Judge Accounting were specifically to exclude so-called "refurbishment" expenses which were expenses of refurbishing trucks but payable under a Vehicle Lease Agreement (VLA) each driver entered into with Opportunity Leasing, an entity related to Defendant.  Refurbishment expenses were not listed as payable under the ICOA.[16] Several of the Set-Offs to be considered in the Magistrate Judge Accounting were referenced in

---

[14] *Id.* at 7-10, 11.

[15] *Id.* at 4-5.

[16] *Id.* at 6-7.

both the ICOA and VLA, including Tractor Lease Payments; CRE Cargo Claims Program; and Passenger Insurance (referred to as "Other Insurance" in the Finalization Order).[17]

The parties' adjudication plan categorizes claims for efficient adjudication.[18] The parties stipulated to the persons included in the first two categories of claims.[19] Both these first two categories include drivers who were charged with refurbishment. The drivers in the first category under paragraph C. 1. (a) of the adjudication plan were those who were charged with refurbishment and received no payment at final settlement.[20] The parties stipulated to the disposition of these claims.[21] Those 51 drivers will receive $119, 339.20.

Drivers in the second category of claims (C. 1. (b)) were also charged with refurbishment but they did receive a payment at final settlement.[22] Evidence and argument as to these claims was presented in two half-day hearings February 10, 2011[23] and February 24, 2011.[24]

### Principal Issue – Payments to Drivers at Final Settlement

Because the parties have agreed on the balances of the escrows after the sole authorized deduction for specific repair and tire purchases (reflected in the Final Accounting) and the amounts which can be considered for Set-Offs (in the Final Accounting), the principal issue between the parties as to the C. 1. (b) claims was the allocation of payments made to drivers at

---

[17] Transcript February 24, 2011, at 8-10.

[18] Adjudication Plan 467, at 4-6.

[19] Stipulation of Initial Listing of Claims for Adjudication, docket no. 470, filed January 7, 2011. The list of C. 1. (a) claimants was modified by agreement to exclude drivers involved in accidents. Transcript February 10, 2011, at 5.

[20] "Whether class members are entitled to an award of actual damages/restitution after set-offs for refurbishments are excluded from the damages analysis, per the Court's earlier ruling, and where England did not tender any monies to the class member at final settlement." Adjudication Plan 467 at 5.

[21] Stipulation Regarding C(1)(a) Claims, docket no. 478, filed February 9, 2011.

[22] "Whether class members are entitled to an award of actual damages/restitution after set-offs for refurbishments are excluded from the damages analysis, per the Court's earlier ruling, and where England tendered monies to the class member at final settlement." Adjudication Plan 467 at 5.

[23] Minute Entry, docket no. 479, filed February 10, 2011.

[24] Minute Entry, docket no. 485, filed February 24, 2011.

the time the drivers separated from their relationship with England. The question was how much of the final payment made to the driver should be a credit against escrow balances. The issue was briefed in the parties' papers preparatory to the hearings.[25]

**Background on Payments**

**Final Settlement – Payment to Driver**

Each final payment to a driver was reflected on an Operator Settlement statement (Final Statement) which amalgamated all the credits and debits related to that driver's account. The Final Statement was prepared at the time of England's final settlement with that driver.[26] England ICOA-related revenues and charges were listed along with Escrow Balances, and interest on them, and Opportunity Leasing CLA-related revenues and expenses. Any positive net amount of all these sums on the Final Statement was paid to the driver, *unallocated as to its source.*

In the Finalization Order, "Judge Stewart did not rule whether those payments were drawn from escrow funds or whether those payments were drawn from a different source."[27] In early 2009 England moved to clarify the treatment of payments under the Finalization Order,[28] and the district judge made a general statement for guidance:

> The Court finds that any payment to class members at the time of settlement which were paid *from escrow accounts* must be deducted from the measure of damages. The court also finds that any payments not made from escrow accounts

---

[25] C.R. England's Brief Regarding Adjudication of C(1)(b) Claims (England Brief 472), docket no. 472, filed January 14, 2011; Plaintiffs' Response to Defendant's Brief Regarding Adjudication of C(1)(B) Claims (Plaintiffs' Response 474), docket no. 474, filed January 26, 2011; Reply Brief Regarding Adjudication of C(1)(b) Claims (Reply Brief 476), docket no. 476, filed February 2, 2011.

[26] Examples of the Operator Settlement statements are attached to Reply Brief 476 as Exhibits A and B, and were marked at the February 10, 2011 hearing as Exhibits 3, C, F and I.

[27] England Brief 472 at iii.

[28] Motion for Clarification of Court's Order Regarding Calculation of Damages, docket no. 386, filed March 23, 2009.

are irrelevant to a determination of damages from unlawful management of escrow accounts, and are not to be considered.[29]

England made a second motion to clarify the treatment of payments.[30] "England proposed that Judge Stewart rule that all payments made at final settlement necessarily constituted escrow funds, to the extent of the escrow funds owed to each driver."[31] Judge Stewart held that "these issues are more appropriate for the damages analysis phase."[32]

The problem presented by the payments issue is that it involves re-evaluation of the financial relationship of each driver with England and with Opportunity Leasing. To determine what amount of the unallocated final payment was for the escrow, it is necessary to examine the calculation of that payment. The Final Statement to a driver included every credit and debit of the relationship between Plaintiffs, England and Opportunity Leasing. While the parties have done an admirable job of agreeing on the Revised Accounting and Final Accounting, the issue of payments requires a re-examination of the amounts listed in the final Operator Settlement statements which were used to calculate the payments made.

At the hearings in February 2011 the parties presented the history of the various accounting documents and the Final Statements. Tricia O'Neal, testified at length regarding the Final Statement and the Proposed Accounting format.[33] The parties also presented their theories of how the magistrate judge should examine payments and evaluate to what extent, if any, a final payment to a driver was made from escrow funds.

---

[29] Order Granting in Part and Denying in Part Motion for Clarification at 2, docket no. 394, filed April 28, 2009.

[30] Defendant C.R. England, Inc.'s Motion to Clarify April 28, 2009 Order, docket no. 418, filed September 18, 2009.

[31] England Brief 472 at vii.

[32] Memorandum Decision and Order Denying Defendant C.R. England, Inc.'s Motion to Clarify April 28, 2009 Order at 4, docket no. 458, filed September 30, 2010.

[33] Transcript February 10, 2011, at 40-83.

## England's Payment Allocation Proposal

England urges the court to presume that the funds it paid out in the final settlement check were escrow funds.  First, England says that

> Unless there is clear evidence to the contrary in the case of a particular class member, the Court should find during its analysis of each truck that England acted rightfully and offset a driver's liabilities at final settlement with revenues, not with escrow funds, reserving escrow funds to the fullest extent possible to be paid directly to the driver.[34]

England says this burden of proof is on the Plaintiffs because "Judge Stewart has made it abundantly clear that actual damages will be awarded only when proven *by Plaintiffs*."[35] However, the credit for payment is *not* part of the damages *claim* but is a payment *defense* raised by England.  Payment is an affirmative defense[36] on which England has the burden of proof.

Second, England says "a strong legal tradition . . . in analogous circumstances" presumes that if a party holds another party's funds, and the holding party commingles its own funds with those held in trust, "courts presume that any expenditure drawn on the commingled account for a non-fiduciary purpose is drawn from monies at the lawful disposal of the holder, and not from monies held in benefit for a third party."[37]

Several things are wrong with this argument.  First, in the current case England, the holder of the escrows, did not place its own money in the drivers' escrows.  There is no showing that the escrow funds received money from England.  Second, if we look at the "account" as the entirety of all monetary amounts listed on a Final Settlement statement, there was still no deposit of England funds.  The amounts on that statement are revenues earned by the driver, and expenses incurred by the driver.  Third, England mis-states the rule.  The rule is a *limitation on*

---

[34] England Brief 472 at 2 and 3 n.3.

[35] *Id.*

[36] Fed. R. Civ. P. 8(c)(1)

[37] England Brief 472 at 3-4.

*the claim of the beneficial owner*, by reference to payments made for non-fiduciary purposes, but England wants to invert the rule to *define the nature of payments made out of the fund as being for fiduciary purposes*.

Examining the Restatement of Restitution formulation of the rule makes clear the inapplicability of England's authority.

> Where a person wrongfully mingles money of another with money of his own and makes withdrawals from the mingled fund and dissipates the money so withdrawn, and subsequently adds money of his own to the fund, the other can enforce an equitable lien upon the fund only for the amount of the lowest intermediate balance, unless
> > (a) the fund or a part of it earns a profit, or
> > (b) the subsequent additions were made by way of restitution.[38]

The rule applies to the fund balance, not to payments out of the account. While the rule measures a *trust balance* by referencing *payments* made for non-fiduciary purposes, England wants to use it to define *payments* made by referring to the *balance* of the escrow accounts. The Restatement example applying the rule illustrates its proper application.

> Where a person wrongfully deposits in a single account in a bank money of another and money of his own, and makes withdrawals from the deposit and dissipates the money so withdrawn, and subsequently makes additional deposits of his own funds in the account, the other person cannot ordinarily enforce an equitable lien upon the account for a sum greater than the lowest intermediate balance of the deposit.[39]

Comparison with the example formulated by England shows the confusion introduced by England's reliance on this principle.

> Stated more simply, if John delivers $100 to Jane with orders for Jane to hold the money, and Jane deposits the check in an account also holding $100 of Jane's own money, a court would find that any purchase by Jane drawing on that

---

[38] Restatement of Restitution (First) §212 (1937).

[39] *Id.* Comment a.

account, up to $100, was permissible, making the presumption that Jane used her own money and not John's.[40]

England wants to use the rule to create a presumption about payments to the beneficiary, when it is a rule about balances due the beneficiary, due to payments to third parties, for non-trust purposes.

England's calculations according to its method are shown in Exhibit L from the hearing. The formulas behind Exhibit L reveal England arrives at "Damages" by determining if the "Final Check" to a driver exceeds the "Net Escrow With Setoff amount."[41]  If the "Final Check" was greater, there is no "Damages" but if the "Net Escrow With Setoff" is greater than the "Final Check," England says the difference is damages.  But England calculates the "Net Escrow With Set"off in a conditional way as well.  "Net Escrow with Setoff" does not include "Setoff" in most instances, because the formula in the spreadsheet adds "Setoffs" *only* if the Setoffs are a negative number.

While Exhibit L shows Refurbishment, that number is not used in England's damages calculations except that it is paid down to the extent the driver had revenues which exceeded expenses.[42]  Excluding refurbishment allows more funds to be available for payment on escrow. The "Setoff" numbers in Exhibit L are the revenues and credits (other than escrow balances) due the driver, less amounts authorized as "Set-Offs" in the Finalization Order. [43] That Setoff number, if positive, means the driver was entitled to receive payment at final settlement for reasons other than escrow.  If that number is negative, then England's position is that the driver

---

[40] England Brief 472, at 4.

[41] The formula for Damages involves spreadsheet logic.  If the Final Check is greater than the Net Escrow With Setoff, then there are no Damages.  Otherwise, Damages is the amount by which the Net Escrow With Setoff exceeds the Final Check.

[42] *Id.* at 87-88, 97.

[43] *Id.* at 84.

owed England money and England's accounting subtracts the balance due it from any escrow funds. The result of England's calculations is that 44 of the 91 claimants in this category would have a recovery, totaling (including interest) $145,365.00.

England's method makes an unwarranted assumption that is not consistent with the historical facts. England, now in hindsight, allocates payments first to escrow when it is clear the calculations at the time in the Final Settlement statements England gave its drivers, were simply an amalgamation of all England and VLA financial transactions related to the driver *including* the escrow funds. The presumption would ignore the clear record of what England was doing. There is no basis to indulge the presumption.

## Plaintiffs' Payment Allocation Proposal

Plaintiffs first proposed that England be held to the format of the Proposed Accounting which "deducted refurbishment set-offs directly from the class member's maintenance escrow fund."[44] "In each case, these individual accountings demonstrate that monies returned to class members at final settlement did not include refurbishment charges deducted from escrow funds."[45]

At the February 10, 2011 hearing the magistrate judge indicated that he did not believe Defendant was judicially estopped by the format of the Proposed Accounting.[46] Plaintiffs then departed from the examples used in their memorandum[47] and provided several exhibits to illustrate their proposal.

---

[44] Plaintiffs' Response 474 at i.

[45] *Id.* at ii; *see also id.* at 2.

[46] Transcript February 10, 2011, at 157-58.

[47] Plaintiffs' Response 474, at 3-5.

Plaintiffs provided an overall calculation of damages as Exhibit 6, under which damages and interest total $371,933.79. Plaintiffs also provided illustrative examples for individual drivers.

- Exhibit 2 is Plaintiffs' calculation of damages for Slade Baldwin. Exhibit 3 is the Final Settlement statement for him. Essentially, the difference between the Plaintiffs' calculation and the Final Settlement statement is refurbishment cost of $110.00 and interest on the escrow amounts totaling $9.40, which Plaintiffs omitted.[48] Because Plaintiffs ignored interest on the escrow, they calculate the damages for Baldwin at $110.00, equal to the refurbishment charge.

- Exhibit 4 is Plaintiffs' calculation of damages for Dennis Holt Enterprises, Inc. Exhibit C is the Final Settlement statement for this driver. His escrow balance (ignoring interest) was $1,971.12. Against the escrow balance, Plaintiffs allow Fuel and Road Tax Payments of $843.17 as a valid Set-Off, leaving a balance of $1,127.95. The refurbishment charge for Holt was $1,786.83. Dennis Holt Enterprises, Inc. does not recover the full amount of the refurbishment because the amount due from escrow cannot exceed the ending escrow balance, less the authorized deduction for Fuel and Road Tax Payments.

- Exhibit 5 is Plaintiffs' calculation of damages for Deon Esterhuyse. Exhibit I is his Final Settlement statement. Plaintiff calculates damages at $3,686.57. This is the refurbishment amount.

The end result of Plaintiffs' proposal is that each Plaintiff receives a refund of refurbishment charges, or, if smaller, the ending escrow balance less the Fuel and Road Tax Payments.

---

[48] Transcript February 10, 2011, at 132-33.

The logic underlying Plaintiffs' proposal – the way Plaintiffs allocate payments – is not as easy to follow as the end results. It appears that Plaintiffs first calculate the amount due the driver from the final trip, by netting legitimate expenses due from the driver against revenue and credits other than escrow which are due the driver.

- If that amount is positive, that positive amount is subtracted from the final payment made to the driver, to determine what, if any amount of the final payment was left to represent an escrow payment. This was the case with Deon Esterhuyse.

| 34 | NON-ESCROW ACCOUNTING AT FINAL SETTLEMENT: | | |
|---|---|---|---|
| 35 | Source: Final Operator Statement | | |
| 36 | REVENUE + NON-ESCROW REIMBURSEMENTS = | *** | $ 4,698.16 |
| 37 | EXPENSES + DEDUCTIONS (excluding refrbshmnt + tax pmt) = | *** | $ 1,145.77 |
| 38 | REVENUE - EXPENSES = | | $ 3,552.39 |
| 39 | | | |
| 40 | PAYMENT: | | |
| 41 | CRE PAYMENT AT FINAL SETTLEMENT = | *** | $ 4,083.90 |
| 42 | Source: Final Operator Statement | | |
| 43 | ESCROW COMPONENT OF FINAL PAYMENT= | | $ 531.51 |

- If however, that net amount after the final trip is negative (showing that the expenses from the last trip exceed the final trip revenue and credit), that negative amount is subtracted from the escrow balance, along with any fuel and road tax owing. This was the case with Slade Baldwin.

- If the final payment to the driver is less than the amount Plaintiffs calculate as owing the driver after netting legitimate expenses due from the driver against revenue and credits other than escrow which are due the driver, Plaintiffs give no credit to England for payment against escrow. This was the case with Dennis Holt Enterprises, Inc.

Because the "revenue – expenses" calculation involves the entire set of figures on the Final Settlements, but only excludes refurbishment, for these Plaintiffs the refurbishment

expense becomes the measure of damages – unless that amount is greater than the ending escrow balance, less the Fuel and Road Tax Payments.

Plaintiffs' illustrative examples ignore interest, which "does produce a difference of tens of dollars" as Plaintiffs' counsel states,[49] making exact numeric reconciliation a challenge. But the approach is consistent with the district judge's mandate that "truck refurbishment charges will be excluded from the [Final] Accounting [and] will also be excluded from the analysis of damages."[50] England's attempt to bring refurbishment in through an analysis of payments is not consistent with the district judge's preclusion "of any deduction for which Plaintiffs owe a contractual obligation solely under the VLA."[51]

### The Magistrate Judge's Proposed Allocation of Payments

Presented with these positions at the February 10, 2011, hearing, and feeling that the inclusion of VLA based revenues and deductions in the Final Statements was confusing and contrary to the Finalization Order's treatment of the VLA and refurbishment charges,[52] the magistrate judge directed the parties to "confer and submit memoranda with examples of an accounting which excludes amounts chargeable and paid under the VLA."[53] The parties complied.[54] But at the hearing February 24th, both parties agreed that either of their proposals was better than the proposal made by the court.[55]

---

[49] Transcript February 10, 2011, at 133.

[50] Memorandum Decision 358, at 7.

[51] *Id.*

[52] Transcript February 10, 2011, at 180.

[53] Minute Entry, docket no. 479, filed February 10, 2011.

[54] Plaintiffs' Report Regarding Analysis of Damages for Claims Under Category C(1)(b), docket no. 483, filed February 22, 2011; Defendant C.R. England's Supplemental Brief Regarding C(1)(b) Claims, docket no. 484, filed February 22, 2011.

[55] Transcript February 24, 2011, at 8.

At the end of that hearing the magistrate judge asked the parties if a court appointed accountant was needed, but was told that the decision needed was a methodology. [56] "I think if the Court issues a methodology, we can get the numbers right"[57] and "work out the details."[58]

The magistrate judge has, for the reasons stated earlier in comparing the two methodologies, selected the Plaintiffs' method of allowing credit for payments made.

## ORDER

IT IS HEREBY ORDERED, based on the above reasons, that allocation of payments made by England to Plaintiffs at Final Settlement shall be applied as Plaintiffs propose.


Dated March 18, 2011.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[56] Transcript February 24, 2011 at 99.

[57] *Id.*

[58] Transcript February 24, 2011 at 92.