IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al.,<br><br>Plaintiffs,<br><br><br><br>vs.<br><br><br><br>C.R. ENGLAND, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S DECISIONS IN DAMAGES ANALYSIS AND MOTION TO RECONSIDER RULINGS ON MAINTENANCE EXPENSES IN THE "OTHER" ACCOUNT AND PREJUDGMENT INTEREST<br><br><br><br>Case No. 2:02-CV-950 TS |

This matter is before the Court for consideration of Defendant's Objections to the Magistrate Judge's Decisions in Damages Analysis and Motion to Reconsider Rulings on Maintenance Expenses in the "Other" Account and Prejudgment Interest. For the reasons discussed below, the Court will deny Defendant's Objections and Motion to Reconsider except as to the issue of prejudgment interest.

1

I.  BACKGROUND

On June 20, 2007, this Court issued its Findings of Fact and Conclusions of Law, finding that Defendant's form lease agreements, known as the Independent Contractor Operating Agreements ("ICOA"), violated the Federal Truth in Leasing Act ("FTLA") and accompanying Department of Transportation Regulations.[1]  As part of this ruling, the Court ordered an accounting of the escrow accounts held by Defendant under the ICOA to determine if and when Defendant had improperly deducted unauthorized amounts from escrow accounts on an individual account basis (the "Accounting").

On October 24, 2008, the Court issued its Memorandum Decision and Order on Finalization of the Accounting of Escrow Accounts, Defendant's Proposed Set-Offs, Actual Damages, and Restitution (the "Finalization Order").[2]  Therein, the Court ordered that "[t]he Accounting is to be finalized and submitted to the Court" by November 23, 2008.[3]  The Court further ordered that "upon submission of the finalized accounting of escrow accounts, the case will be referred to Magistrate Judge David Nuffer for a truck-by-truck analysis of actual damages."[4]

---

[1] Docket No. 299.

[2] Docket No. 358.

[3] *Id*. at 11.

[4] *Id*.

Defendant filed its final accounting on November 24, 2008 (the "Final Accounting").[5] The parties then engaged in a damages analysis with then Magistrate Judge Nuffer.

Defendant's Objections and Motion to Reconsider challenge various aspects of this Court's previous rulings, as well as those of the Magistrate Judge. The specifics of those previous rulings will be discussed in further detail below.

## II. STANDARDS OF REVIEW

Defendant challenges both the decisions of the Magistrate Judge and prior rulings of the Court. Thus, two different standards of review are at issue.

The parties agree that the Court is to apply a *de novo* standard of review to those portions of the Magistrate Judge's decision to which Defendant objects.

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[6] "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[7]

---

[5] Docket No. 359.

[6] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[7] *Id.* (citation omitted).

III.  DISCUSSION

A.  PAYMENTS MADE AT FINAL SETTLEMENT

Defendant's first objection concerns how the Magistrate Judge accounted for payments that were made to drivers at the time of final settlement. Defendant argues that the Magistrate Judge should have used the rule applied for the tracing of trust funds in commingled accounts. Defendant argues that, if this rule applies, any final payment to the driver should be considered a return of escrow funds.

On April 28, 2009, in response to Defendant's Motion for Clarification, the Court held that "any payment to class members at the time of settlement which were paid *from escrow accounts* must be deducted from the measure of damages. The Court also finds that any payments not made from escrow accounts are irrelevant to a determination of damages from unlawful management of escrow accounts, and are not to be considered."[8]

Defendant sought additional clarification, requesting "that the Court issue an order clarifying that all funds paid to England drivers at the time of final settlement were specifically escrow funds that should be offset against damages before adjudication of England's set-off claims."[9]  The Court declined to specifically rule on Defendant's request, finding "that these issues are more appropriate for the damages analysis phase."[10]

---

[8] Docket No. 394, at 2.

[9] Docket No. 459, at 3.

[10] *Id.* at 4.

4

The Magistrate Judge was then tasked with determining how to account for those payments made at the final settlement. Both parties submitted proposals to the Magistrate Judge on this issue. Defendant argued that the Magistrate Judge should presume that the funds it paid out in the final settlement were escrow funds. Defendant based this argument on a rule used in tracing escrow funds. Specifically, "England urged the Court to apply the majority principle of trust law that when a trustee commingles trust funds with his own funds, any payment from the fund for a non-trust purpose is presumed to have been drawn from non-trust funds, and any payment from the fund for a trust purpose is presumed to have been drawn from trust funds."[11]

The Magistrate Judge found "[s]everal things . . . wrong with this argument"[12] and ultimately rejected Defendant's proposal. Instead, the Magistrate Judge adopted the proposal supplied by Plaintiffs. Defendant argues that the Magistrate Judge's decision was incorrect and that the tracing rule to which it cites is directly applicable here.

As set forth above, the Court has held that any payments made at the time of final settlement that were paid from escrow accounts must be deducted from the appropriate measure of damages. Defendant asks the Court, as it asked the Magistrate Judge, to presume that payments made at final settlement were made from the escrow accounts. Defendant argues that this presumption follows from the equitable tracing principle set forth in its Objection.

As was detailed in the Magistrate Judge's thorough decision on this issue, there are several problems with the application of that principle to this case. Thus, even reviewing the

---

[11]Docket No. 543, at 2-3.

[12]Docket No. 491, at 7.


Magistrate Judge's decision *de novo*, as the Court must, the objection on this ground must be overruled. As was stated by the Magistrate Judge, payment is an affirmative defense on which Defendant has the burden of proof. Defendant has not met its burden to show that the payments made at final settlement were escrow funds. Further, the Magistrate Judge's decision to employ the methodology proposed by Plaintiffs is well-supported by the facts and record. Therefore, this objection is overruled.

B.   SET-OFFS FOR REPAIR AND MAINTENANCE CHARGES

The Finalization Order established that "all repair and tire purchases are approved deductions from escrow accounts, and must be included in the Accounting. Because these set-offs will be deducted prior to finalizing the Accounting, they will not be considered during the analysis of damages."[13]

Defendant attempted to revisit the issue of repair and maintenance set-offs during the damages analysis conducted by the Magistrate Judge. Defendant sought to adjust the Final Accounting by including repair and maintenance charges of which it was previously unaware. Plaintiffs filed a motion seeking to exclude any consideration of repair and maintenance set-offs from the damages analysis, which was granted by the Magistrate Judge.[14] The Magistrate Judge, relying on the language from the Finalization Order quoted above, precluded consideration of the newly discovered repair and maintenance charges during the damages analysis. The Magistrate Judge held that "Defendant will not be allowed during this damages phase to modify the Final

---

[13] Docket No. 358, at 6.

[14] Docket No. 446.

Accounting with newly-discovered repair and maintenance charges."[15]  The Magistrate Judge also based his decision on the fact that Defendant had exclusive control over the accounting process.  Finally, the Magistrate Judge held that allowing Defendant to revise the Final Accounting would not promote an efficient use of judicial resources.  "Changing the Final Accounting this late would further prolong this already protracted litigation by further discovery, more motions and hearings, additional factual disputes, and increased expenses for the parties and the court."[16]  Defendant objected to the Magistrate Judge's decision on this issue.

In its earlier order, the Court found important, as the Magistrate Judge had, that the Final Accounting was under Defendant's exclusive control.  "Thus, Defendant already had a full and fair opportunity to account for all repair and tire set-offs during the Accounting phase of the damages assessment."[17]  The Court further found "that equity weighs against readdressing an accounting which was filed in late 2008 and has been relied upon throughout the damages analysis phase.  To hold otherwise would further delay an already protracted assessment of damages and contravene the plain language of this Court's Finalization Order."[18]

In its Objections, Defendant again seeks to revisit the repair and maintenance set-offs.  Defendant presents three arguments in support of its request.  First, Defendant argues that the damages computation for drivers who had repair-related expenses in their "other" accounts is

---

[15]*Id*. at 4.

[16]*Id*. at 5.

[17]Docket No. 458-1, at 6.

[18]*Id*. at 7.

inaccurate because it omits expenses in that account. Second, Defendant argues that fixing this inaccuracy will be simple, because the amounts have now been properly identified. Finally, Defendant argues that the Court's previous rulings were based on the incorrect premise that Defendant could have identified these newly discovered repair and maintenance costs during the Final Accounting.

For substantially the same reasons stated by the Court and the Magistrate Judge previously, the Court must reject Defendant's argument. The fact remains that the Final Accounting was under Defendant's control. Therefore, Defendant cannot be heard to complain of errors that were of its own making. It is true, as Defendant argues, that the Final Accounting was completed on an expedited basis. However, Defendant never sought additional time to complete the Final Accounting, and it was only after Defendant discovered additional amounts that it should have deducted from the Final Accounting that this issue was brought to the Court's attention. Additionally, the Final Accounting has been relied upon by both parties and is the basis for the damages analysis. Adjusting the Final Accounting at this late date would likely upend the entire damages analysis, undoing years of work by all parties. Therefore, it is not in the interest of justice to revisit this issue.

C.   LEASE PAYMENTS AFTER TERMINATION OF THE ICOA

In the Finalization Order, the Court ruled that "truck lease payments were mentioned in Addendum 3 to the ICOA, and may therefore be considered during the damages analysis, as a potentially legitimate debt owed by individual Plaintiffs to Defendant."[19] However, the Court

---

[19] Docket No. 358, at 7.

also stated "that truck lease payments were also mentioned in the VLA, and directs that consideration of lease payments exclude any terms in the VLA regarding truck lease payments."[20]

Defendant filed a Memorandum on April 15, 2011, wherein it argued that it was entitled to a set-off for lease payments accrued by drivers after termination of the ICOA.[21]

In an Order dated May 19, 2011, the Magistrate Judge held that "Defendant is prohibited from asserting set-offs against class member's escrow funds amounts for remaining truck lease payments owed after the date of the termination of the ICOA as these amounts are defined and obligated under the Vehicle Leasing Agreement ["VLA"] and not under the ICOA."[22]

The VLA contains the following liquidated damages clause:

> YOU agree to pay up upon termination of the lease by default or otherwise: (a) Any lease payment due as of the date of notice of default or termination. In the case of default, lease payments shall be paid by YOU until WE can lease the vehicle or sell it for a price WE deem appropriate; (b) Any expense WE incur in returning the vehicle to the condition in was when leased, ordinary wear and tear excepted . . . , in replacing any equipment or accessories which are missing from the vehicle, and incurred in selling or leasing the vehicle to a third party; (c) Any expense WE incur in returning the vehicle to the office WE have at Salt Lake City, UT or a closer alternate point if WE so elect; (d) Any expenses, including attorney fees, WE incur in securing possession of the vehicle if you do not voluntarily return the vehicle . . . .[23]

---

[20] *Id.*

[21] Docket No. 498.

[22] Docket No. 509, at 1-2.

[23] Docket No. 545, Ex. C.

Under this language, it is clear that the VLA governs lease payments after the termination of the ICOA. Therefore, the Magistrate Judge was correct in not considering them, in accordance with the Court's prior rulings.

Defendant argues that the Magistrate Judge was incorrect based on certain language contained in Addendum 3 to the ICOA. It is true that there is certain language in Addendum 3 to support Defendant's argument. However, the VLA contains much more specific language concerning lease payments after termination of the ICOA. The general rule in contract interpretation is that "specific terms and exact terms are given greater weight than general language."[24] Based on the Court's prior ruling that the Magistrate Judge exclude terms of the VLA regarding truck lease payments, the Magistrate Judge's decision on this issue was correct.

D.  SET-OFFS FOR TRUCK RECOVERY EXPENSES

As with lease payments after termination of the ICOA, the Magistrate Judge held that "Defendant is prohibited from asserting set-offs against class member's escrow funds amounts for truck recovery costs because those amounts are owing under the Vehicle Lease Agreement."[25]

The VLA's liquidation clause obligated class members to pay "[a]ny expense WE incur in returning the vehicle to the office WE have at Salt Lake City, UT or a closer alternate point if WE so elect" and "[a]ny expenses, including attorney fees, WE incur in securing possession of the vehicle if you do not voluntarily return the vehicle."[26]

---

[24] Restatement (Second) of Contracts § 203(c).

[25] Docket No. 509, at 2.

[26] Docket No. 545, Ex. C.

Based on this language, and for the same reasons stated with regards to truck lease payments after termination of the ICOA, the Magistrate Judge's decision was correct.

E.    PREJUDGMENT INTEREST

In the Finalization Order, the Court ordered that restitution awards to individual Plaintiffs and class members should be paid "along with payment of reasonable interest."[27] The Magistrate Judge took up the issue of determining the reasonable prejudgment interest rate during the damages analysis. Plaintiffs argued that the Utah statutory legal interest rate of 10% should be imposed, while Defendant argued that the Treasury bill rate should apply. The Magistrate Judge disagreed with both approaches.

The Magistrate Judge rejected Plaintiffs' argument, because the ICOAs provided for an interest rate, and the Utah statutory rate only applies where the parties have not set an interest rate. The Magistrate Judge rejected Defendant's argument because the regulatory provision relied upon by Defendant set the minimum interest rate. Rather than adopt either approach offered by the parties, the Magistrate Judge found the following interest rates should be applied:

> a. The regulatory interest rate, also stated in the contract, applies to all balances held on deposit in the escrow;
> b. The regulatory interest rate applies after sums under the ICOA are due and payable; but
> c. For Class Members whose ICOA specifies a default interest rate, that rate applies to sums over 30 days past due – that is after 45 days has passed since termination of the ICOA; and
> d. The Utah statutory rate does not apply because the contracts in this case are not silent concerning interest rate provisions.[28]

---

[27]Docket No. 358, at 6.

[28]Docket No. 403, at 7.

The following chart illustrates the Magistrate Judge's decision.

| Type of Agreement | During Escrow (including 45 days after termination) | 30 Day "Grace Period" | Beyond "Grace Period" |
|---|---|---|---|
| ICOA **with** 18% default interest rate provision | Regulatory interest rate applies | Regulatory interest rate applies | ICOA default interest rate of 18% applies |
| ICOA **without** default interest rate provision | Regulatory interest rate applies | Regulatory interest rate applies | Regulatory interest rate applies |

Defendant objected to the Magistrate Judge's decision. Defendant argued that the regulations mandated the use of the regulatory rate, that prior cases applied the regulatory rate, that use of the 18% interest rate contravenes the regulations, and that 18% was not a reasonable rate.

The Court, using a "clearly erroneous or contrary to law" standard, rejected these arguments and overruled Defendant's objection.[29]

Defendant again objects to the Magistrate Judge's decision on prejudgment interest. Defendant correctly argues that the Court should have applied a *de novo* standard in reviewing the Magistrate Judge's ruling on this issue. Defendant further argues that the 18% rate used in certain cases overcompensates Plaintiffs. Plaintiffs argue, however, that even under the *de novo* standard, the Court should overrule Defendant's objection.

As an initial matter, the fact that the Court has already ruled on Defendant's objection does not preclude it from relitigating the issue. As the parties appear to agree, the Court applied an incorrect standard in evaluating the Magistrate Judge's decision previously. Therefore, one of

---

[29]Docket No. 441.

the grounds for a motion to reconsider, the need to correct clear error, is at issue and it is appropriate for the Court to consider this issue *de novo*.

"The purpose of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment."[30] "[A]wards of prejudgment interest are governed by fundamental considerations of fairness."[31]

> [A]n award of prejudgment interest under federal law is governed by a two-step analysis. First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest.[32]

Here, the Court finds that prejudgment interest would serve to compensate the named Plaintiffs and class members, and that there are no equitable considerations that would preclude such an award. The only question, then, is the amount of prejudgment interest to be applied in this case.

Neither party takes issue with the application of the regulatory rate in various circumstances. Thus, the only issue here concerns the application of an 18% interest rate in those cases where the ICOA calls for such an interest rate beyond the grace period. The Magistrate

---

[30] *Guides Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (quotation marks and citation omitted).

[31] *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988) (quotation marks and citation omitted).

[32] *Id.* at 1257.

Judge applied this rate because this is the rate that Defendant would have charged drivers if the drivers owed Defendant money after the grace period.

While there is a certain appeal to this approach, the Court finds that this rate is more than is required to adequately compensate Plaintiffs and would act as a punishment against Defendant. The Court finds that applying an interest rate of 18% would be inequitable, especially considering the fact that this litigation has occurred during a period of historically low interest rates. Further, the interest rate would create a windfall for Plaintiffs and unnecessarily punish Defendant because of the length of time it has taken to complete this case. Finally, the Court must reject Plaintiffs' argument in support of the higher interest rate. Simply put, this is not a collection case and the cases relied upon by Plaintiffs are inapposite.

The question then becomes what interest rate should be used. Defendant, as it has before, suggests using the rate found in the Truth-in-Leasing regulation. 49 C.F.R. § 376.12(k)(5) provides:

> That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. . . . The interest rate shall be established on the date the interest period begins and shall be *at least equal* to the average yield or equivalent coupon issue yield on 91–day, 13–week Treasury bills as established in the weekly auction by the Department of Treasury.[33]

It is clear that this language does not, as Defendant has previously argued, require the Court to apply the Treasury bill rate. However, the fact that the regulation specifically references the Treasury bill rate suggests that the regulators thought such rate would be appropriate, at least as a minimum rate. Additionally, other courts have applied the Treasury bill rate to other cases

---

[33] 49 C.F.R. § 376.12(k)(5) (emphasis added).

under the same regulations at issue here. Finally, this Court has also applied the T-bill rate in a number of cases, stating that "this particular measure of the market rate for prejudgment interest is attractive because it makes the prejudgment rate consistent with the post-judgment rate."[34] Based on these considerations, the Court will order the application of the Treasury bill rate as the prejudgment interest rate in this case.

F.     DETRIMENTAL RELIANCE

Defendant's final argument concerns the issue of detrimental reliance. Defendant has long argued that, before Plaintiffs may recover damages, they must show detrimental reliance. For example, in its Proposed Findings of Fact and Conclusions of law, Defendant asserted its view that the law required Plaintiffs to show detrimental reliance to prove actual damages.[35] The Court did not explicitly discuss this issue in its Findings of Fact and Conclusions of Law, but implicitly rejected the argument.

Defendant again raised the issue of detrimental reliance in its August 25, 2008 Status Report.[36] However, in its Finalization Order, the Court did not expressly rule on this issue. Rather, the Court held that Plaintiffs were entitled to actual damages.

> The Court finds that the amount of actual damages is the net amount owed each individual Plaintiff under the escrow accounts, the ICOA, and any other employment-related agreements between Plaintiffs and Defendant. Stated another way, the class member is entitled to receive as actual damages those monies which that class member paid into any or all of the three escrow accounts, less

---

[34] *See Amoco Prod. Co. v. United States*, 663 F. Supp. 998, 1002 (D. Utah 1987).

[35] Docket No. 297, ¶¶ 22, 24, 96, 98, 121, 142, 163, 178, 257, 297.

[36] Docket No. 347.

actual obligations incurred by that class member that were authorized by the ICOA or another agreement between that class member and Defendant.[37]

During the damages analysis before the Magistrate Judge, Defendant again sought a ruling on the issue of detrimental reliance.[38] On April 11, 2011, the Magistrate Judge held that detrimental reliance was not required.[39] The Magistrate Judge held that the Court's definition of damages, stated above, was similar to the formulation of damages used by other courts.

The Magistrate Judge rejected Defendant's reliance on *Owner-Operator Independent Drivers Association, Inc. v. Landstar Systems, Inc.*,[40] a case arising out of the Eleventh Circuit. In *Landstar*, the court required detrimental reliance. However, as the Magistrate Judge correctly pointed out, *Landstar* involved disclosure violations. In this case, the Court found that Defendant violated the escrow provision under Section 376.12(k).

Defendant's objection conflates the concepts of actual damages and detrimental reliance. The *Landstar* court held that, in order for the plaintiffs in that case to prove actual damages, they must show detrimental reliance. While this makes sense in the context of disclosure violations, it does not make sense in the case of escrow violations where Defendant's conduct is at issue.

The Court has held that actual damages must be shown. But where, as here, Defendant has been found to have mismanaged the class member's escrow accounts by failing to properly return escrow funds and by failing to provide an accounting, the measure of actual damages is the

---

[37]Docket No. 358, at 5.

[38]Docket No. 465.

[39]Docket No. 497.

[40]622 F.3d 1307 (11th Cir. 2010).

amount that Plaintiffs would have been paid despite Defendant's actions. The Court, through the use of the Magistrate Judge, has engaged in an analysis to determine the appropriate level of damages for each class member. Defendant has provided nothing to suggest that detrimental reliance is required in this situation. Therefore, Defendant's objection is overruled.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Objections to the Magistrate Judge's Decisions in Damages Analysis and Motion to Reconsider Rulings on Maintenance Expenses in the "Other" Account and Prejudgment Interest (Docket No. 542) is GRANTED IN PART AND DENIED IN PART as set forth above. It is further

ORDERED that Plaintiffs' counsel submit a proposed judgment for the Court's signature by March 11, 2013.

DATED   February 11, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge